UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ANDJA MARICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:11-cv-96 |
| | ) |
| SCHOOL TOWN OF MUNSTER, | ) |
| INDIANA, an Indiana Community School | ) |
| Corporation, and LAKE CENTRAL | ) |
| SCHOOL CORPORATION, an Indiana | ) |
| Community School Corporation, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment [DE 39] filed by the defendants, School Town of Munster, Indiana and Lake Central School Corporation, on January 29, 2015. For the following reasons, the motion is **GRANTED**.

*Background*

On May 14, 2012, the plaintiff, Andja Marich, filed her Amended Complaint, which alleged discrimination and retaliation in violation of Title VII. Marich is female and was forty-seven years old when she filed her Amended Complaint. In 1986, the defendant, School Town of Munster (STM), hired Marich as a special education teacher and assigned her to the West Lake Special Education Cooperative. West Lake is a joint special education program for students in STM and the defendant, Lake Central School Corporation (LCSC). At that time, all West Lake employees were STM employees, but they could be assigned to schools within STM or LCSC.

Marich taught special education at LCSC middle schools through 1994 and then became a West Lake consultant. She remained a consultant until 1998, when she was promoted to a West Lake supervisor. As a West Lake consultant and supervisor, Marich remained an employee of STM. In 2001, after Marich obtained her principal's license, STM hired her as an assistant principal at Wilbur Wright Middle School.

At the end of the 2005-2006 school year, Marich accepted a promotion to become an assistant principal at Munster High School. At the end of the 2006-2007 school year, Steve Tripenfeldas, the high school principal and Marich's supervisor, told her that he had requested her removal as assistant principal because things were not working. STM transferred her to West Lake as a supervisor/early childhood director, which was similar to her prior West Lake supervisor position. Following the transfer, STM did not reduce Marich's salary, despite it being contrary to the pay scale, which paid a West Lake supervisor less than a high school assistant principal.

In 2007, she applied for an assistant principal position at Wilbur Wright Middle School. The position included duties as the athletic director. STM hired Tim Sopko, a male under age forty, for the position. Sopko did not have a principal's license but was more proficient with computers and had experience in athletics. Marich remained as a West Lake supervisor and met with STM administration regarding her contract in May or June 2009. The administration decided to freeze her salary because it was higher than the West Lake supervisor pay scale and stated that she would not receive any raises until her salary was consistent with the pay scale.

On November 15, 2009, Marich filed her first charge with the EEOC and alleged gender and age discrimination. She received her Right to Sue letter on October 21, 2010. Before Marich filed her first charge, she received positive evaluations as a West Lake supervisor and

2

middle school assistant principal.  In the Spring of 2010, the West Lake director informed the supervisors that LCSC was taking over the employment of West Lake administrators from STM.  Because new West Lake teachers were LCSC employees, the administration found it would be more efficient if the West Lake administration and teachers had the same employer.  Initially, Marich thought all the supervisors would be transferred from STM to LCSC without reapplying.  In July 2010, Joan Machuca became the West Lake interim director after the director retired.  Although Machuca previously was the West Lake assistant director, she did not work closely with Marich until becoming interim director.

Within the first couple months of the 2010-2011 school year, Machuca told all the West Lake supervisors that they made a good team and were doing a good job.  However, at the beginning of the 2010-2011 school year, a parent complained to Machuca that Marich was not following through on her duties.  Machuca had additional concerns because Marich spoke generally and could not provide specifics when asked about tasks and goals.  In November 2010, the West Lake supervisors were scheduled to meet with LCSC administration to discuss the transfer.  Prior to the meeting, Machuca advised Marich that she did not need a resume and that the meeting was not an interview.  Ultimately, Marich's meeting was postponed because Machuca had concerns about Marich's ability and was not sure whether she would recommend her transfer.  Later, Marich learned that each supervisor needed to apply for the position at LCSC.

In October 2010, Machuca asked each supervisor to create professional and personal goals for themselves.  When Machuca met with Marich to discuss her goals, Machuca told her specific areas for improvement.  However, Marich indicated that she already was well versed in those areas.  In November 2010, Machuca received a second parent complaint about Marich.

Throughout the school year, Machuca had continuing concerns about Marich's performance. In March 2011, Machuca evaluated Marich and advised that she recommended that LCSC not retain her as a West Lake supervisor. During the meeting, Machuca found her unprofessional, and Marich did not find any issues with her performance. After the meeting, Marich attempted to attend an educational conference to address some of her reported weaknesses and to discuss the evaluation further with Machuca. However, Machuca denied both requests.

Ultimately, Marich was assigned to teach early childhood beginning in the 2011-2012 school year. Marich filed her second charge on October 21, 2010 and alleged that the transfer of West Lake supervisors from STM to LCSC was in retaliation for filing her first charge. She filed her third and fourth charges in November 2011 and February 2012 and alleged that the decision not to retain her as a West Lake supervisor and her March 2011 evaluation were the result of age and gender discrimination and in retaliation for filing her prior charges.

Machuca learned about Marich's first EEOC claim towards the beginning of the 2010 school year. Machuca claimed that she partly decided not to recommend Marich for a West Lake supervisor role because principals had complaints and concerns about her performance. Specifically, she alleged that four principals had received complaints from parents and that they found that their special education teachers under Marich's supervision did not know how to complete their duties. The parties deposed three of those principals, Linda Bevil, Nancy Ellis, and Nicole Guernsey. None of the principals reported any fear of retaliation from Marich. Bevil and Guernsey stated they had difficulty contacting Marich on a couple of occasions but had no other complaints about her performance. Ellis indicated that she did not have trouble contacting Marich, did not recall any parent complaints, and was satisfied with the students' progress.

Additionally, Ellis and other individuals wrote letters of recommendation for Marich after she was removed from her West Lake supervisor position.

*Discussion*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014); *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). A fact is material if it is outcome determinative under applicable law. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed. 2d 142, 155 (1970); *Stephens*, 569 F.3d at 786. If the non-movant bears the ultimate burden of persuasion on an issue at trial, the requirements are not as onerous for the moving party. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Under this circumstance, the moving party can either come forward with affirmative evidence negating an element of the opponent's claim or by asserting that the nonmoving party has insufficient evidence to succeed on its claim. *Modrowski*, 712 F.3d at 1169.

Summary judgment may be entered against the non-moving party if it "is unable to 'establish the existence of an essential element to [the party's] case, and on which [that party] will bear the burden of proof at trial . . . .'" *Kidwell*, 679 F.3d at 964 (quoting *Benuzzi v. Bd. of Educ.*, 647 F.3d 652, 662 (7th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment." ***Blythe Holdings, Inc. v. DeAgnelis***, 750 F.3d 653, 656 (7th Cir. 2014) (quoting ***Anderson v. Liberty Lobby***, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The non-moving party must show specific facts that create a genuine issue for trial. ***Blythe***, 750 F.3d at 656.

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial. ***Anderson***, 477 U.S. at 248; ***Cung Hnin v. Toa, LLC***, 751 F.3d 499, 504 (7th Cir. 2014); ***Stephens***, 569 F.3d at 786; ***Wheeler v. Lawson***, 539 F.3d 629, 634 (7th Cir. 2008).

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. . . . [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

***Anderson***, 477 U.S. at 250; *see* ***Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 149–51, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105, 120–22 (2000) (setting out the standard for a directed verdict); ***Celotex***, 477 U.S. at 322–23; ***Stephens***, 569 F.3d at 786; ***Argyropoulos v. City of Alton***, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); ***Springer v. Durflinger***, 518 F.3d 479, 483 (7th Cir. 2008) (stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" ***Blythe***, 750 F.3d at 656 (quoting

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Marich's Amended Complaint alleged Title VII violations based on gender, age discrimination, and retaliation. She claimed that STM and LCSC discriminated or retaliated against her by removing her as an assistant high school principal in 2007, refusing to rehire her as an assistant middle school principal in late 2007, and not retaining her as a supervisor at West Lake when the contract was transferred from STM to LCSC. The defendants have requested summary judgment on all of Marich's claims. However, Marich's response only addressed the retaliation claim regarding the decision to not retain her as a West Lake supervisor at LCSC.

Marich filed her first EEOC charge on November 17, 2009 claiming age and gender discrimination. She based the charge on her removal as an assistant high school principal in 2007 and the refusal to rehire her as an assistant middle school principal in late 2007. In deferral states, such as Indiana, a discrimination charge must be filed within 300 days of the discriminatory act's occurrence. ***Doe v. R.R. Donnelley & Sons Co.***, 42 F.3d 439, 445 (7th Cir. 1994); **42 U.S.C. § 2000e-5(e)(1)**. A discriminatory act occurs on the date it happened. ***Nat'l R.R. Passenger Corp. v. Morgan***, 536 U.S. 101, 110, 122 S. Ct. 2061, 2070, 153 L. Ed. 2d 106 (2002). Termination and the refusal to hire qualify as discrete acts, and Marich needed to file her charge within 300 days of each act's occurrence to timely file her claim. *See **Nat'l R.R. Passenger Corp.***, 536 U.S. at 114 ("Discrete acts such as termination . . . or refusal to hire are easy to identify.").

Because Marich filed her charge on November 17, 2009, she could recover only for acts that occurred on or after January 21, 2009, 300 days before she filed her charge. There is no dispute that Marich was removed as an assistant principal from Munster High School and not

rehired as an assistant principal at Wilbur Wright Middle School in 2007. Therefore, Marich's discrimination charge based on those acts was untimely.

Furthermore, the defendants indicated that Marich did not timely file her complaint regarding those acts. A plaintiff has ninety days to file a complaint after receiving the Notice of Right to Sue. **42 U.S.C. § 2000e-5(f)(1)**. Marich received her Notice of Right to Sue on October 20, 2010 but did not file her Complaint until February 25, 2011, 129 days later. Therefore, she did not timely initiate this suit regarding those acts. *See **Dandy v. United Parcel Serv., Inc.***, 388 F.3d 263, 270 (7th Cir. 2004).

Moreover, Marich did not address her discrimination claims based on her removal as an assistant principal at Munster High School or the refusal to rehire her as an assistant principal at Wilbur Wright Middle School. She did not make an argument in her brief or present any evidence in support of those claims. Therefore, any claims based on those acts are waived. *See **Ienco v. Angarone***, 429 F.3d 680, 684 (7th Cir. 2005) (finding that party waived claims when he failed to develop them in a summary judgment response); ***Fifth Third Bank v. Double Tree Lake Estates, LLC***, 2014 WL 3659780, at *8 (N.D. Ind. July 23, 2014).

Although Marich did not allege disparate impact in her four charges, the Amended Complaint referenced a pay disparity between men and women administrators at STM. *See* [DE 17, ¶¶ 24–26]. The defendants have argued that Marich should not be permitted to assert a disparate impact theory because that requires statistical correlation evidence and her claims dealt with intent, not statistical evidence. *See **Noreuil v. Peabody Coal Co.***, 96 F.3d 254, 258 (7th Cir. 1996). Similarly, despite Marich's allegation of a hostile work environment in her Amended Complaint, the defendants have claimed that she could not present that allegation because none of her four charges alleged a hostile work environment. *See* [DE 17, ¶ 29]. Marich also did not

make any argument in her brief or present any evidence in support of the disparate impact or hostile work environment claims. Therefore, those claims are deemed waived. *See Ienco*, 429 F.3d at 684. For these reasons, the defendants' motion for summary judgment regarding Marich's removal as assistant principal from the high school, the refusal to rehire her at the middle school, and any claims based on disparate impact or a hostile work environment is **GRANTED**.

Next, the defendants have requested summary judgment on Marich's three remaining charges. Her second charge alleged that the termination of her administrative contract with STM was based on age and gender discrimination and in retaliation for filing the first charge. The third and fourth charges claimed that the decision to not recommend her for an administrative contract with LCSC and her unfavorable March 2011 evaluation were based on age and gender discrimination and in retaliation for filing the second charge.

First, the defendants have argued that summary judgment was appropriate for Marich's discrimination claims based on the above acts. Title VII enables a plaintiff to prove discrimination by direct evidence of discriminatory intent or, where no direct evidence exists, by using the indirect-burden shifting method established in ***McDonnell Douglas Corp. v. Green*** and refined in ***Tex. Dep't of Cmty. Affairs v. Burdine***. *See **Young v. United Parcel Service, Inc.***, 575 U.S. ___, 135 S. Ct. 1338, 1345 (2015); ***Moser v. Ind. Dep't of Corr.***, 406 F.3d 895, 900–01 (7th Cir. 2005). The direct method requires the plaintiff to show through either direct or circumstantial evidence that the employer's adverse employment action was impermissibly motivated. ***Wilkins v. Riveredge Hosp.***, 130 F. App'x 823, 828 (7th Cir. 2005). The defendants have argued that Marich did not provide any direct evidence of discriminatory intent or any information or testimony that inferred intentional discrimination.

9

Under the indirect method, the plaintiff has the initial burden to show that: (1) she belongs to a protected group; (2) she was performing to the employer's legitimate expectations; (3) she suffered an adverse employment decision; and (4) the employer treated similarly situated employees who are not in the protected group more favorably. *See* **Keeton v. Morningstar, Inc.**, 667 F.3d 877, 884 (7th Cir. 2012). The defendants have conceded that Marich, as a female, belonged to a protected group and that the cancellation of her administrative contract, the evaluation, and the refusal to allow her to continue as a supervisor were adverse employment decisions. However, they have argued that she could not establish that she performed to the employer's legitimate expectations or that similarly situated employees outside the protected group were treated more favorably.

Marich did not address her discrimination claims or present evidence to support those claims. Therefore, she waived those allegations. *See* **Ienco**, 429 F.3d at 684. For these reasons, the defendants' motion for summary judgment regarding Marich's discrimination claims based on the cancellation of her administrative contract, the evaluation, and the refusal to allow her to continue as a supervisor at West Lake is **GRANTED**.

Last, the defendants have requested summary judgment for Marich's retaliation claims. Unlawful retaliation in violation of Title VII occurs "when an employer takes actions that discriminate against an employee because she has opposed a practice that Title VII forbids," or "'testified, assisted, or participated in' a Title VII proceeding or investigation." **42 U.S.C. § 2000e-3(a)**; *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007) (internal quotations omitted) (citing **Burlington N. & Santa Fe Ry. Co. v. White**, 548 U.S. 53, 59, 126 S. Ct. 2405, 2410, 165 L. Ed. 2d 345 (2006)); *see* **Hicks v. Forest Pres. Dist. of Cook Cnty., Ill.**, 677 F.3d 781, 787 (7th Cir. 2012). An employer effectively retaliates "against an employee by taking

actions not directly related to his employment or by causing him harm *outside* the workplace."
***Burlington N.***, 548 U.S. at 63, 126 S. Ct. at 2412; *see* ***Thompson v. N. Am. Stainless, LP***, 562
U.S. 170, 174, 131 S. Ct. 863, 868, 178 L. Ed. 2d 694 (2011). Marich may prove retaliation
directly or indirectly. ***Alexander v. Casino Queen, Inc.***, 739 F.3d 972, 983 (7th Cir. 2014);
***Kampmier***, 472 F.3d at 939.

To succeed under the direct method of proof, Marich must show that "(1) she engaged in a statutorily protected activity, (2) her employer took a materially adverse action against her, and (3) there was a causal connection between the two." ***Malin v. Hospira, Inc.***, 762 F.3d 552, 558 (7th Cir. 2014) (citing ***Caskey v. Colgate-Palmolive Co.***, 535 F.3d 585, 593 (7th Cir. 2008). The court may consider both direct and circumstantial evidence when evaluating the causal connection. ***Malin***, 762 F.3d at 559.

To prove retaliation under the indirect method, "a plaintiff must show that after filing the complaint of discrimination only she, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though she was performing her job in a satisfactory manner." ***Kampmier***, 472 F.3d at 940 (citing **Stone v. City of Indianapolis**, 281 F.3d 640, 644 (7th Cir. 2002)). Under this method, the plaintiff must prove that the employees involved in the retaliatory action were aware of her complaint. ***Lumpkins-Benford v. Allstate Ins. Co.***, 567 F. App'x 452, at 455 (7th Cir. 2014) (citing ***Naficy v. Ill. Dep't of Human Servs.***, 697 F.3d 504, 513 (7th Cir. 2012)). Suspicious timing alone is not enough to prove retaliation. ***Lumpkins-Benford***, 567 F. App'x at 455 (citing ***Kidwell v. Eisenhauer***, 679 F.3d 957, 966 (7th Cir. 2012)).

In their summary judgment motion, the defendants stipulated that Marich engaged in a statutorily protected activity by filing charges with the EEOC. Additionally, they have conceded

11

that the termination of Marich's STM administrative contract, her unfavorable March 2011 evaluation, and the refusal to retain her as a West Lake supervisor at LCSC qualified as adverse employment actions. However, they have argued that Marich could not establish a causal connection between the protected activity and the adverse actions under the direct method. Additionally, they have claimed that she did not establish that she met her employer's legitimate expectations or that she was treated less favorably than similarly situated employees under the indirect method.

First, the defendants have argued that Marich did not establish retaliation under either method for the termination of her STM administrative contract. They have indicated that all West Lake supervisors had their STM contracts terminated as a result of the transfer from STM to LCSC. Therefore, they have argued there was no causal connection under the direct method and that Marich was not treated less favorably under the indirect method because each supervisor's STM contract was terminated. Marich did not address the termination of her STM contract under either the direct or indirect methods for proving retaliation. Therefore, that claim is waived. *See Ienco*, 429 F.3d at 684.

Next, the defendants have claimed that Marich cannot establish retaliation relating to her March 2011 evaluation. They have argued that she could not establish that a similarly situated person was treated more favorably or that she was meeting her employer's legitimate expectations. Marich did not address those arguments or argue that she had established retaliation in reference to her March 2011 evaluation. Therefore, that claim is waived. *See Ienco*, 429 F.3d at 684. For these reasons, the defendants' motion for summary judgment regarding the termination of Marich's STM administrative contract and her March 2011 evaluation is **GRANTED**.

Finally, the defendants have argued that Marich did not establish retaliation in reference to the refusal to retain her as a West Lake supervisor with LCSC. First, Marich has argued that she established retaliation under the direct method. As discussed above, the defendants conceded the first two elements: (1) that she engaged in a protected activity and (2) that she suffered an adverse employment action. To satisfy the third element, the causal link between the protected activity and the employment action, Marich may use direct or circumstantial evidence. She has not presented any direct evidence of retaliation, which would require an admission or something similar. *See **Raymond v. Ameritech Corp.***, 442 F.3d 600, 610 (7th Cir. 2006).

However, Marich may establish the causal link through a "'convincing mosaic' of circumstantial evidence . . . ." ***Rhodes v. Ill. Dep't of Transp.***, 359 F.3d 498, 504 (7th Cir. 2004) (quoting ***Troupe v. May Dep't Stores Co.***, 20 F.3d 734, 737 (7th Cir. 1994)). A convincing mosaic must include evidence that infers a retaliatory intent and could include: "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *See **Hobgood v. Ill. Gaming Bd.***, 731 F.3d 635, 643–44 (7th Cir. 2013) (quoting ***Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522***, 657 F.3d 595, 601 (7th Cir. 2011)).

To show retaliation through circumstantial evidence, Marich relied on the change in her evaluations after Machuca learned about her protected activity. She has shown that she received positive evaluations up until Machuca became her supervisor. Additionally, she indicated that Machuca had no issues with her performance in the summer before the 2010-2011 school year and that Machuca said the supervisors made a good team in October 2010. Therefore, Marich

13

has claimed that Machuca gave her a poor evaluation in March 2011 after learning about her protected activity at the beginning of the school year in retaliation.

Marich has not presented any evidence to link the evaluation and her termination as a supervisor to the protected activity besides the suspicious timing. Machuca learned about the protected activity at the beginning of the school year and did not recommend her termination or give her a poor evaluation until March 2011, approximately seven months later. Without additional evidence to support a link between the two events, the court cannot draw an inference of retaliatory intent. *See* **Harper v. C.R. England, Inc.**, 687 F.3d 297, 308 (7th Cir. 2012) (finding that a several month time gap between the protected activity and the employee's termination was too great to support an inference of retaliation).

Marich has claimed that the process to transfer the supervisors from STM to LCSC changed after Machuca learned about her protected activity. She presented a staff personnel proposal that stated "[s]tarting with the 2011-2012 school year, all West Lake Administrative Staff will be employees of Lake Central School Corporation . . . ." [DE 44-3]. Marich has argued that the word "all" meant each West Lake supervisor would automatically retain their position as supervisor following the transfer from STM to LCSC. However, she has not presented any evidence that the proposal was enacted or that "all" meant each supervisor would retain her position.

She also claimed that the process changed based on emails with Machuca. Initially, each supervisor was scheduled to meet with the LCSC administration to discuss the transfer. Machuca told Marich that the meeting was not an interview and that she did not need a resume because it was simply to discuss the transfer process. Because the meeting was not an interview, Marich assumed that each supervisor would retain her position. After her protected activity,

Marich's meeting was cancelled, which she has claimed supported her retaliation charge. However, she has not presented any support that her meeting was cancelled because of her protected activity or that she was not automatically transferred because of the protected activity. Rather, Machuca stated that she requested the LCSC administration to cancel the meeting because she had concerns about Marich's performance and was not sure whether she would recommend her retention as a supervisor. Furthermore, Marich did not present any evidence that the transfer process changed following her protected activity but only that her initial assumption was wrong. Moreover, she has listed no evidence that the other supervisors were automatically retained as opposed to retaining them based on their performance throughout the 2010-2011 school year.

The court does not find that Marich has presented sufficient circumstantial evidence to create a causal link between her protected activity and the refusal to retain her as a West Lake supervisor. Moreover, the court cannot draw an inference of retaliatory intent from the circumstantial evidence she has presented. Therefore, the court does not find that she has presented a prima facie case of retaliation under the direct method.

Marich also has argued that she established retaliation under the indirect method. As discussed above, the defendants have conceded that she engaged in a statutorily protected activity and that she suffered an adverse employment action. However, they have argued that Marich cannot establish that she met her employer's legitimate expectations or that she was treated less favorably than a similarly situated employee who did not engage in a statutorily protected activity.

Marich has concluded that the other supervisors qualify as similarly situated employees who were treated more favorably because they retained their positions. Although a similarly

15

situated employee does not need to be identical to Marich, she must show that the employee "dealt with the same supervisor [and] w[as] subject to the same standards" and "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [her] conduct or the employer's treatment of them." **Gates v. Caterpillar, Inc.**, 513 F.3d 680, 690 (7th Cir. 2008) (internal quotation marks omitted). The court does not find that Marich demonstrated that the other supervisors were similarly situated.

Marich did not name any of the other supervisors or indicate why they were similarly situated. Based on the evidence, the court can conclude that Machuca supervised each supervisor and that they were subject to the same standards. However, Marich has not alleged that the other supervisors had parental complaints, failed to meet their goals, or had any of the issues that Machuca found with Marich's performance. Thus, she has not identified a similarly situated employee for comparison. Therefore, the court cannot find that a similarly situated employee that did not engage in a protected activity was treated more favorably.

Additionally, Marich must demonstrate that she was performing her job satisfactorily at the time of the adverse employment action. "The proper inquiry mandates looking at [Marich's] job performance through the eyes of her supervisor at the time of [the adverse employment action]." **Gates**, 513 at 689; *see* **Peele v. Country Mut. Ins. Co.**, 288 F.3d 319, 329 (7th Cir. 2002) ("In most cases, when a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but 'whether the employee was performing well at the time . . . .'" (citations omitted)).

Marich has failed to rebut Marchuca's criticism of her job performance. Marich did not present any evidence to dispute Marchcua's findings that she failed to lead her staff properly,

16

that parents had complained about Marich's performance, or that she failed to meet deadlines. Marich did dispute the principal's concerns about her supervision of the special education teachers but conceded that the principals had trouble contacting her and received a parental complaint. Therefore, the court does not find that she was performing her job adequately because she failed to rebut Marchuca's evaluation. Thus, Marich has failed to establish retaliation under the indirect method. Furthermore, because she has not made a prima facie case of retaliation under the indirect method, the court does not need to address the issue of pretext. However, Marich did not present an argument of pretext anyway.

Based on the foregoing reasons, the Motion for Summary Judgment [DE 39] is **GRANTED**.

ENTERED this 23rd day of April, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge